*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZACHARY HAWKINS,

       Plaintiff-Appellant,

v

NORFOLK SOUTHERN RAILWAY
COMPANY,

       Defendant-Appellee.

UNPUBLISHED
September 17, 2019

No. 340338
Wayne Circuit Court
LC No. 15-014421-CZ

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

In this suit involving an alleged workplace injury, plaintiff, Zachary Hawkins, appeals by right the jury's verdict in favor of defendant, Norfolk Southern Railway Company. Hawkins was employed by Norfolk Southern as a train conductor. Hawkins presented evidence to the jury that he suffered injuries, including frostbite and neurological complications, from exposure to extremely cold weather while working during the January 2014 "polar vortex." He argued that his injuries were caused in whole or in part by various acts or omissions committed by Norfolk Southern, including the railroad's admitted failure to provide a properly functional heater in Hawkins's locomotive, in violation of federal law. Norfolk Southern contended that any injuries Hawkins sustained were caused by his own negligence, including his failure to comply with the railroad's safety rules. On appeal, Hawkins argues that the trial court improperly instructed the jury on the applicable law and that the improper instructions warrant a new trial. Although the trial court's instructions might have been imperfect, we conclude that the instructions adequately stated the law, and therefore we affirm.

## I. BACKGROUND

On January 6, 2014, Hawkins reported to a Norfolk Southern railyard to prepare for the departure of a train. There was no trainmaster at the railyard that night, which Hawkins believed was unusual given that the temperature was an extraordinary fourteen degrees below zero Fahrenheit. According to Hawkins, the trainmaster typically would discuss the weather conditions and would ensure that the conductor would have help if needed. Norfolk Southern

-1-

typically provided its employees with hand warmers if they were working on a cold night. However, Hawkins could not find any hand warmers before departing that night, and he stated that he had made a request to dispatch for hand warmers but received no response. Norfolk Southern nevertheless contended that even if hand warmers had not been available immediately, there were ample supplies of hand warmers conveniently available in several nearby locations, and Hawkins could and should have availed himself of those other supplies.

It is undisputed that the main heater in the locomotive to which Hawkins was assigned was not operational, and as a consequence, Norfolk Southern admits that it violated 49 CFR 229.119(d) by failing to maintain the locomotive cab with a functioning heater to maintain a temperature of at least 60 degrees. An engineer had inspected the locomotive earlier that night and discovered that the main heater was blowing out cold air while the train was stationary, but he expected that it warm up as the train started running. The engineer testified that the second set of heaters, the sidewall or radiant heaters located by the conductor's feet, was working properly. The engineer did not report this problem, and Hawkins believed that the heaters were working when the locomotive was at the railyard.

The train departed at approximately 12:00 a.m. on January 7, 2014. Hawkins's role as conductor required him to be able to hold onto the "grab irons" of a car as the train moved, and he needed to repeatedly get off the train to clear and align track switches. On that night, Hawkins needed to clear 10 to 12 switches. Some of the switches were closer together, requiring Hawkins to walk to the next switch and clear it before the train could move. Hawkins indicated that the weather impeded his ability to clear and align the switches, and because his gloves were bulky, he could not operate some of the switches without removing his gloves. Hawkins testified that he requested and received assistance in clearing and aligning two of the switches, but he was simply "told that maintenance is currently busy and to do the best that I can" in response to a further request for help, so he proceeded to follow that instruction. Hawkins contended that the "switch broom" provided to assist him was an inadequate tool for clearing and operating the switches, whereas Norfolk Southern generally contended that the switch broom was the only proper tool for the job.

Stephen Myrick, a terminal superintendent and Norfolk Southern's representative at trial, testified that train conductors are expected to be able to work independently and solve problems. He also explained that train crew were expected to call "any number of people," including the yardmaster, trainmaster on duty, terminal superintendent, or dispatcher, if they had any safety concerns, and that they should stand by and wait until help arrived. He stated that it was "absolutely not" expected for conductors to use their hands to clear switches. Furthermore, crew were supposed to refuse locomotives they believed to be unsafe, and it was "not a problem to replace a locomotive," either by fixing a problem immediately or assigning an alternative locomotive. Train conductors and engineers were "equally responsible" for reporting anything wrong with the locomotive, and they had "a duty to exercise care for their own safety."

Brandon Zidar, a trainmaster for Norfolk Southern, agreed that conductors had many responsibilities, including knowing and following a number of safety rules. He stated that Norfolk Southern's first rule was " 'Safety is the first importance in the discharge of duty,' " and he further observed that "[t]he railroad is a very unforgiving place as far as, you know, if a mistake is made." He confirmed that the railroad's policy was for conductors to call for

assistance if they were unable to operate a switch with the equipment available, and they were not expected to engage in continued efforts thereafter. Zidar conducted an investigation into Hawkins's injury, and he testified that as far as he knew, Norfolk Southern had never charged Hawkins with violating any of its rules. Nevertheless, he also noted that his report was "all based upon what the employee gave me as his version of the injury."

Hawkins first reported the problem with the heaters at 3:54 a.m. because he did not notice a problem with the heater until that time. John Kelley, a mechanical supervisor for Norfolk Southern, received Hawkins's report at approximately 4:00 a.m. However, Kelley did not reach Hawkins and Powers until approximately two hours later because he was sent to assist with a derailed train first. Kelley verified that the main heater of the locomotive was not working, but he could not fix it on-site. However, there was some evidence that Hawkins and the engineer had cracked open the locomotive cab's window while they smoked cigarettes throughout the night; Kelley testified that the locomotive cab normally stayed warm in the winter from the second set of heaters alone if the cab were to be kept "buttoned up." Hawkins and Powers were picked up from their location at 6:15 a.m. by a Norfolk Southern van and driven back to their hotel. Hawkins estimated that he had been outside for perhaps as much as five and a half hours.

Hawkins alleged that Norfolk Southern's negligence caused him to suffer frostbite that resulted in nerve damage. Hawkins testified that he experienced shooting pain in his fingers and toes and poor grip strength. Norfolk Southern disputed whether Hawkins suffered any injury and contended that any injury Hawkins suffered was not caused by Norfolk Southern's negligence.

## II. STANDARDS OF REVIEW

This Court reviews de novo claims of instructional error, but it reviews a trial court's determination that a particular instruction applies to the facts of the case for an abuse of discretion. See *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. See *Pransky v Falcon Group, Inc*, 311 Mich App 164, 173; 874 NW2d 367 (2015). To the extent that this issue involves a claim that the trial court erred when it refused to instruct the jury on assumption of risk as a curative instruction, this Court reviews a trial court's decision whether to give a curative instruction for an abuse of discretion. See, e.g., *Brenner v Kolk*, 226 Mich App 149, 164; 573 NW2d 65 (1997). A trial court abuses its discretion when it selects an outcome that is not within the range of principled outcomes. See *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153-154; 908 NW2d 319 (2017).

We do not review jury instructions piecemeal, but rather we review "instructions as a whole to determine whether the instructions adequately informed the jury of the applicable law, given the evidentiary claims of the case." *Holland v Leidel*, 197 Mich App 60, 65; 494 NW2d 772 (1992). "Jury instructions should not omit material issues, defenses, or theories that are supported by the evidence. Instructional error warrants reversal if it resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Ward v Consol Rail Corp*, 472 Mich 77, 83-84; 693 NW2d 366 (2005) (quotation marks and citations omitted). An instructional error causes prejudice when it significantly interferes with the jury's ability to decide the case intelligently, fairly, and impartially. *Id.* at 87.

Hawkins's claims against Norfolk Southern were premised upon violations of the Federal Employers' Liability Act (FELA), see 45 USC 51 *et seq*. This Court applies federal substantive law—as determined by the United States Supreme Court—when reviewing a claim of error involving FELA, but applies this state's procedural rules. See *Jaqua v Canadian Nat'l R, Inc*, 274 Mich App 540, 545-546; 734 NW2d 228 (2007); see also *Norfolk Southern R, Co v Sorrell*, 549 US 158, 165-166; 127 S Ct 799; 166 L Ed 2d 638 (2007). Although this Court may find decisions of the federal circuit courts persuasive, it is not bound by them. *Jaqua*, 274 Mich App at 546. A state trial court must, as a matter of substantive federal law, instruct the jury on the standards properly applicable to a claim under FELA when requested. See *CSX Transp, Inc v Hensley*, 556 US 838, 842; 129 S Ct 2139; 173 L Ed 2d 1184 (2009); see also *Norfolk Southern*, 549 US at 172 (stating that Missouri's courts have the same flexibility as any other state in instructing the jury on the applicable law so long as the courts instruct the jury on the correct standard).

## III. ASSUMPTION OF RISK

Hawkins first argues that the trial court erred by refusing his request to instruct the jury regarding the inapplicability of "assumption of risk" in this matter. In particular, Hawkins contends that Norfolk Southern's theory of the case was, in relevant part, that Hawkins's injuries were his own fault for choosing to work that day. Such an argument would be grossly improper, especially considering the evidence Norfolk Southern introduced to the effect that Hawkins had developed some work-attendance problems. Although Norfolk Southern did not articulate its arguments as clearly as might be desired, we are unable to conclude that it actually advanced such an impermissible theory to the jury.

Hawkins claimed that Norfolk Southern was liable under FELA for negligently causing him bodily injury by allowing Hawkins to use a train without proper safety precautions. Under FELA, a "common carrier by railroad" engaged in interstate commerce is liable to an employee or the employee's estate

> for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. [45 USC 51.]

Congress enacted FELA to "shif[t] part of the human overhead of doing business from employees to their employers." *Norfolk & Western R Co v Ayers*, 538 US 135, 145; 123 S Ct 1210; 155 L Ed 2d 261 (2003) (quotation marks and citations omitted). It did so in part by abolishing several common-law defenses that barred recovery by injured workers; it abolished the fellow-servant rule, the defense of contributory negligence, and the defense of assumption of risk. See *id.*; see also 45 USC 53 (abolishing contributory negligence as a bar to recovery); 45 USC 54 (abolishing assumption of risk as a bar to recovery). Notwithstanding these changes to the common-law approach, the Supreme Court has held that Congress incorporated common-law negligence with the enactment of FELA; and, for that reason, common-law principles are entitled to great weight when analyzing the statute. See *Consol Rail Corp v Gottshall*, 512 US 532, 543-544; 114 S Ct 2396; 129 L Ed 2d 427 (1994).

-4-

Federal courts distinguish the concepts of "assumption of risk" and "contributory negligence." Contributory negligence involves fault, whereas assumption of risk does not:

> The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. [*Seaboard Air Line R v Horton*, 233 US 492, 503-504; 34 S Ct 635; 58 L Ed 1062 (1914).]

Assumption of risk does not involve negligence by either the employer or employee; it is the " 'voluntary, knowledgeable acceptance of a dangerous condition that is necessary' for an individual 'to perform his duties,' " which cannot serve as a bar to a claim under FELA. *Sloas v CSX Transp, Inc*, 616 F3d 380, 393 (CA 4, 2010) (quoting *Taylor v Burlington Northern R Co*, 787 F2d 1309, 1316 (CA 9, 1986)). By contrast, contributory negligence is a careless act or omission by the plaintiff that tends to add danger to a preexisting condition. *Id*. In other words, quite aside from the chutzpah that would be displayed by an employer brazenly contending that its employee should have chosen not to do his or her job or to follow orders, such an argument cannot serve as a defense to a claim under FELA.

Because assumption of risk cannot serve as a bar to recovery under FELA, see 45 USC 54, federal courts have stated that there may be circumstances when it would be appropriate to instruct the jury that the employee's decision to knowingly take on a risk inherent in the work environment does not amount to contributory negligence. See, e.g., *Butynski v Springfield Terminal R Co*, 592 F3d 272, 280 (CA 1, 2010). Indeed, some federal courts have opined that the better course of action in cases involving defense claims of contributory negligence is for the trial court to describe the doctrine of assumption of risk and instruct the jury not to reduce the plaintiff's recovery on that basis. See *Fashauer v New Jersey Transit R Operations, Inc*, 57 F3d 1269, 1274 (CA 3, 1995) (collecting cases and discussing a split of authority on the proper circumstances for giving such instructions).

However, other courts have stated that it is not appropriate to instruct the jury on assumption of risk where the issue was not explicitly or impliedly before the jury. See *Russell v Nat'l R Passenger Corp*, 189 F3d 590, 595 (CA 7, 1999); see also *Heater v Chesapeake & Ohio R Co*, 497 F2d 1243, 1249 (CA 7, 1974) (stating that "the use of an assumption of risk instruction in an FELA case has been condemned by this and other courts" and opining that such "an instruction is a confusing, negative statement which refers to issues not involved in an FELA case"). As the court in *Fashauer* stated, "[t]hese latter cases enunciate a salutary principle:

Whenever possible, courts should spare juries intricate descriptions of opaque legal doctrines inapplicable to the case." *Fashauer*, 57 F3d at 1275. Nevertheless, the *Fashauer* court agreed that such an instruction might be warranted under some circumstances:

> But in the end, this salutary principle can only be a starting point. Because assumption of risk and contributory negligence are similar doctrines, and because only the latter is a defense under the FELA, we recognize that sometimes the absence of an explanation of the differences between the doctrines will confuse the jury as to the governing law. And, following that logic, we have held that when the facts of the case present a danger of jury confusion on the issue, an assumption of risk charge should be given. Thus, in *Koshorek v Pennsylvania R Co*, the only evidence concerning the plaintiff's negligence consisted of his continuing to work in a dusty shop when he "either knew or should have known that inhalation of excessive dust over an extended period of time might cause him harm." The district court refused to give an assumption of risk charge and the jury returned a verdict for the railroad. We reversed because "[h]ad an adequate distinction between conduct constituting contributory negligence and that which would have constituted assumption of risk been pointed to the jurors in the charge, the jury might well have reached a different verdict."

> Thus, the most we can say as a matter of law is that when the evidence adduced at trial presents a danger that the jury might reduce a plaintiff's recovery based on the impermissible theory of assumption of risk, then the trial judge should instruct the jury on how that doctrine differs from contributory negligence. But when the evidence presents no such danger, then an adequate charge on contributory and comparative negligence suffices. [*Fashauer*, 57 F3d at 1275 (citations omitted).]

We agree with the *Fashauer* court's approach. Under that approach, an instruction on assumption of risk is appropriate in FELA cases only when there is "a danger that the jury might reduce [the] plaintiff's recovery based on the impermissible theory" that the plaintiff assumed the risk by working under the conditions at issue. *Id.* In such a case, the trial court should instruct the jury that it "may not find contributory negligence on the part of the plaintiff simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions." *Id.* at 1280 (quotation marks, citation, and alteration omitted). Where the evidence and arguments, however, are that the plaintiff acted negligently by refusing reasonably safe alternatives, the standard instructions are adequate. *Id.* at 1281.

In this case, the parties did not initially argue or present evidence that Hawkins contributed to his own injury by simply acceding to his employer's request to work during dangerously cold weather. Hawkins emphasized in his opening statement that Norfolk Southern had a duty to provide a safe working environment, which included taking steps to ensure that Hawkins could work safely in the given weather conditions. He maintained that the railroad's failure to adhere to the standard of care caused Hawkins to be needlessly exposed to dangerous conditions. Norfolk Southern conceded in its opening statement that it had violated a regulation, and it discussed the variety of its acts and omissions that Hawkins alleged to be negligent.

Norfolk Southern argued that the evidence would nevertheless show that it had not been negligent, and that the evidence would show that Hawkins's own acts and omissions caused any injuries that he might have suffered. Norfolk Southern specifically disputed what it characterized as an argument by Hawkins that the railroad had been negligent for having "even had the temerity to call him into work." However, it did not contend at that time that Hawkins should have refused to come in to work.

The evidence presented at trial concerning the acts or omissions of the parties focused on whether Norfolk Southern, Hawkins, or both breached the applicable standards of care. The undisputed evidence showed that it was dangerously cold on the night at issue. However, the parties did not argue nor present evidence that tended to permit an inference that Hawkins assumed the risk of any harms occasioned by the cold or that his acquiescence in his employer's call to work precluded him from recovery. Instead, the evidence and arguments all focused on whether Norfolk Southern took reasonable steps to protect Hawkins's safety in light of the working conditions, and whether Hawkins took reasonable steps to protect his own safety in light of the working conditions. Thus, this case did not involve evidence that Hawkins merely accepted working under dangerous conditions. See *Joyce v Atlantic Richfield Co*, 651 F2d 676, 683 (CA 10, 1981). Rather, the arguments and evidence concerned Hawkins's failure to take reasonable steps to protect himself by obtaining the equipment or utilizing the services available to him from Norfolk Southern, or by failing to take other reasonable precautions to protect himself from the cold.

Given the evidence and arguments, there was no need to instruct the jury that Hawkins did not assume the risk of working in cold temperatures. See *Russell*, 189 F3d at 595. The instructions on contributory and comparative negligence sufficed to allow the jury to fairly consider the issues before it. See *Fashauer*, 57 F3d at 1275. Accordingly, the trial court did not err when it refused to instruct the jury on assumption of risk when defense counsel first proposed submitting that instruction, because the evidence and arguments then before the jury did not create a risk that the jury might reduce Hawkins's recovery on the basis of his decision to work that night. *Id.* at 1280. That may, however, have changed after defense counsel's closing remarks.

In his closing remarks, Hawkins again argued that Norfolk Southern breached its duty to provide reasonable and safe working equipment and conditions in light of the weather on the night at issue. By contrast, he maintained, the evidence showed that Hawkins acted reasonably under the circumstances; he tried to get hand warmers and dressed appropriately. Similarly, Norfolk Southern agreed that it had a duty to provide a reasonably safe place to work, but it maintained that it did provide such a place. It noted that the evidence showed that Norfolk Southern properly trained Hawkins, provided him with proper equipment for the job, and provided him with the means to avoid hazards. It conceded that the railroad violated the regulations by failing to ensure that the locomotive's heater was working, but it maintained that the evidence showed that that violation did not cause Hawkins any injury. It also asserted that the evidence showed that Hawkins had not actually suffered an injury.

Norfolk Southern then discussed evidence it believed showed that Hawkins was negligent. In particular, that Hawkins's only complaint about the working conditions—the first time he reported his injury—was that the locomotive's heater was not working. It then suggested

that Hawkins's decision to work that night was negligent, stating: "So if Mr. Hawkins thought it wasn't safe to work on January 6 – 7, 2014, he should've said I'm not going to work, this is not safe. He had that right, he had that duty." Hawkins immediately objected, asserting that Norfolk Southern was improperly injecting assumption of the risk. The trial court did not rule on the objection immediately, whereupon Norfolk Southern continued by emphasizing that although Hawkins had pointed out that the railroad was aware of the weather, Hawkins was likewise aware of the weather, and both had duties to conduct themselves accordingly. It emphasized that Hawkins had a duty as the conductor to refuse the locomotive if the heater was not working; insist on obtaining hand warmers or obtain them from the numerous other sources available; and comply with the railroad's safety rules upon which he had been briefed and trained, which included reporting a non-functional heater, refraining from smoking in the cab, and paying attention to symptoms of impending frostbite.

When read in context, the statement by Norfolk Southern appears to have been an inartfully worded discussion of the evidence that Hawkins should have taken advantage of safe alternatives to proceeding as he did. Indeed, Norfolk Southern's theory was, consistent with the argument it proceeded to continue making, that Hawkins not only should have utilized several readily available means to protect himself in carrying out his duties, failing to do so was actually in violation of the railroad's rules and policies. Such an argument is not improper. Nevertheless, by improperly stating that Hawkins had a duty not to work if he thought it was unsafe, Norfolk Southern impliedly invited the jury to find that Hawkins assumed the risk of working during dangerously cold weather, notwithstanding any negligence by Norfolk Southern. Consequently, the better practice for the trial court would have been to rule on Hawkins's objection immediately and provide a curative instruction to prevent the jury from being misled. See *Fashauer*, 57 F3d at 1275.

However, it is not clear that the trial court abused its discretion when it refused to instruct the jury on assumption of risk—as opposed to some other curative instruction—at that very moment. See *Brenner*, 226 Mich App at 164. The trial court may reasonably have concluded that the risk of the jury improperly considering assumption of risk on the basis of this statement alone was low and could be cured by instructing the jury on contributory negligence. Indeed, the trial court instructed the jury about the duty imposed on Norfolk Southern shortly after the arguably improper statement. Those instructions made it clear that Norfolk Southern had a duty to provide a reasonably safe work environment even under the circumstances presented by the dangerously cold weather. Furthermore, Norfolk Southern's improper comment was isolated, and as noted, it occurred in the context of an argument that was otherwise entirely proper.

The trial court instructed the jury that Norfolk Southern could be liable if Hawkins suffered an injury "in whole or in part" that resulted from negligence by Norfolk Southern. The court then instructed the jury on Hawkins's theory of negligence and informed them that Norfolk Southern denied that it was negligent in those ways. The court then explained the elements: it instructed the jury that Hawkins had the burden to establish that Norfolk Southern was negligent and that its negligence "caused or contributed in whole or in part to some injury." It further informed the jury that Norfolk Southern had a duty to use "ordinary care under the circumstances" to furnish Hawkins with a reasonably safe place in which to work. It informed the jury that Norfolk Southern had a continuing duty to maintain and keep the work place in a reasonably safe condition. It also explained that Norfolk Southern's duty was "measured by

what a reasonable prudent person would anticipate or foresee resulting from particular circumstances." The court told the jury that it should find Norfolk Southern "negligent" if it found by a preponderance of the evidence that Norfolk Southern failed to take reasonable precautions that a reasonably prudent person would have taken under the circumstances. The court also properly informed the jury that it had to return a verdict in Hawkins's favor if it found that Norfolk Southern's negligence caused Hawkins's injury, even if it also found that Hawkins was negligent.

After the jury left to deliberate, Hawkins renewed his objection and requested that the trial court should instruct the jury on assumption of risk. Norfolk Southern disagreed that it had interjected assumption of risk during closing arguments. Rather, it opined that its closing argument had merely stated that "if [Hawkins] came to work and he thought there was some reason he shouldn't proceed, he should've said something to somebody and not done it." The trial court acknowledged the objection and, with no analysis whatsoever, simply stated that it "is declining any further action" on the objection or requested instruction.

We think the trial court did not follow the best possible practice in responding to or addressing Norfolk Southern's improper comment. However, it does not appear that the concept of assumption of risk was sufficiently before the jury to require an instruction. See *Fashauer*, 57 F3d at 1275. For the same reason, to the extent that Hawkins asked for the assumption of risk instruction as a curative instruction, the trial court did not abuse its discretion when it refused to give the instruction. See *Brenner*, 226 Mich App at 164. The doctrine of assumption of risk can be confusing, and the trial court could reasonably conclude that the instruction would be more of a hindrance than a clarification under the totality of the circumstances. See *Heater*, 497 F2d at 1249. The jury had already been properly instructed on the applicable duty and had begun deliberations. The trial court could reasonably conclude that the jury was not confused or misled by Norfolk Southern's improper remark and that the jury would follow the court's instructions on the applicable duties and the concept of contributory and comparative negligence. See *Lenawee Co v Wagley*, 301 Mich App 134, 159; 836 NW2d 193 (2013) (stating that juries are presumed to understand and follow their instructions). Therefore, its decision to take no further action after the misstatement was within the range of principled outcomes. See *Mitchell*, 321 Mich App at 153-154.

Even if we were to conclude that the trial court should have instructed the jury that assumption of risk was not a defense, that error would not warrant relief. See MCR 2.613(A); see also *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985) (stating that an error is harmless under MCR 2.613(A) unless it caused such unfair prejudice to the complaining party that allowing the verdict to stand would be inconsistent with substantial justice). An instruction on assumption of risk does not address the duty owed by the employer; rather, it implicates the employee's responsibilities and creates a potential that the jury might reduce the plaintiff's award on the ground that the plaintiff voluntarily assumed the risk of harm associated with the work conditions. In this case, the jury never reached whether Hawkins was negligent because it found that Norfolk Southern was not negligent. When a jury finds that the railroad was not at all negligent, a trial court's failure to give an instruction on assumption of risk is harmless. See *Osteguin v Southern Pacific Transp Co*, 144 F3d 1293, 1296 (CA 10, 1998).

The trial court did not err when it refused to instruct the jury on assumption of risk.

## IV. NEGLIGENCE PER SE

Hawkins next argues that the trial court erred when it instructed the jury on his claim of negligence per se for the violation of a safety regulation. Specifically, Hawkins alleged that Norfolk Southern violated, in relevant part, 49 CFR 229.119(d) of the Locomotive Inspection Act (LIA), 49 USC 20701 *et seq*. The instruction of which Hawkins complains might have been better phrased or better left unstated, but we disagree that it was erroneous.

LIA generally provides that a railroad must maintain its locomotives in a proper condition and safe to operate without unnecessary danger of personal injury. 49 USC 20701(1). The United States Supreme Court determined that the predecessor to LIA did not create a right of action but did make violations of that act unlawful. See *Urie v Thompson*, 337 US 163, 188; 69 S Ct 1018; 93 L Ed 1282 (1949). The Court in *Urie* noted that Congress created a cause of action for negligence under § 1 of FELA, see 45 USC 51, and abolished the defenses of contributory negligence and assumption of risk in §§ 3 and 4, see 45 USC 53; 45 USC 54, when the railroad's violation of a safety statute caused the employee's injuries. The Court read these provisions together and held that a violation of LIA amounts to negligence per se under FELA. See *Urie*, 337 US at 188-189. Therefore, an employee injured as a result of a violation of LIA can bring suit under FELA to recover for his or her injuries caused by the violation. See *Lilly v Grand Trunk Western R Co*, 317 US 481, 485-486; 63 S Ct 347; 87 L Ed 411 (1943); see also *Straub v BNSF R Co*, 909 F3d 1280, 1282-1284 (CA 10, 2018) (discussing the development and historical treatment claims under FELA premised on a violation of LIA). A railroad's failure to comply with a regulation issued by the Federal Railroad Administration is a violation of LIA. *Straub*, 909 F3d at 1284.

Because Norfolk Southern conceded that it violated 49 CFR 229.119(d), it would be liable under FELA if its violation caused Hawkins's injury "in whole or in part." See 45 USC 51. Moreover, because the regulations promulgated under LIA are treated as safety statutes, see 45 USC 54a, Hawkins's recovery would not be diminished in proportion to his contributory negligence, see 45 USC 53. Stated another way, Norfolk Southern would be strictly liable for Hawkins's complete injury if the jury found that it violated 49 CFR 229.119(d) and that the violation caused Hawkins's injury in whole or in part. See *Straub*, 909 F3d at 1284.

Regarding this claim, the trial court instructed the jury:

> Plaintiff has brought a claim alleging that Defendant violated a Federal Locomotive Safety Regulation 49 CFR 229.119(D) which provides as follows.

> Any occupied locomotive cab shall be provided with a heating arrangement that maintains a temperature of at least 60 degrees Farenheit [sic], 6 inches above the center of each seat in the cab compartment. Defendant admits that it violated this regulation.

> In order for you to find that [sic] Plaintiff Hawkins under the 49 CFR 229.119(D) that I just read for you he must show by a preponderance of the evidence not only that there was a violation of the statute or regulation, but also that said violation caused Plaintiff's claimed injury or damage in whole or in part.

If the injury resulted from some other cause or as a result solely of Plaintiff's own conduct you must find for the Defendant.

It is the duty of any person who has been injured to use reasonable diligence and reasonable means under the circumstances in order to prevent the aggravation of such injuries into effect [sic] or recovery from such injuries.

If you should find the Plaintiff failed to seek out or take advantage of a [illegible] or employment opportunity or medical treatment that was reasonably available to Plaintiff under all the circumstances shown by the evidence, then you should reduce the amount of Plaintiff's damages by the amount Plaintiff could have reasonably realized that Plaintiff could take advantage of such opportunity.

Hawkins argues that the fourth paragraph of the above instruction was vague and improperly invited the jury to consider Hawkins's contributory negligence, which might be viewed as some "other cause." Hawkins argues that it could have caused the jury to find in favor of Norfolk Southern even if its violation caused Hawkins's injury in part, which would be contrary to the strict liability imposed for violations of regulations. He further argues that the use of the word "conduct" instead of the word "negligence" was additionally confusing, because FELA specifically provides that conduct that does not amount to negligence cannot be used to offset liability.

The instruction as a whole could potentially have been better phrased. Additionally, the fourth paragraph was likely unnecessary to a proper understanding of the claim involving negligence per se. However, when read in context, we disagree with Hawkins that the jury was likely to be misled or confused. When the instructions are read as a whole and together with the verdict form, they adequately and fairly presented the applicable theories and law. See *Holland*, 197 Mich App at 65; *Lewis*, 258 Mich App at 211. Importantly, the complained-of sentence occurred immediately following the trial court's instruction that the jury should find in favor of Hawkins if he established that Norfolk Southern's admitted violation caused his injury in whole *or in part*. It was then immediately followed by an instruction that the jury should reduce any award of *damages* by an amount to which Hawkins contributed to his own injuries, in clear contrast to whether the railroad was *liable* in the first place.[1]

Furthermore, the trial court had already informed the jury that it was Hawkins's theory that the failure to provide an adequately heated cab caused his injuries, and that it was the position of Norfolk Southern that its violation of the regulation did not cause any injury to Hawkins. Finally, the verdict form asked the jury to decide whether the violation of the regulation was "a cause in whole or in part of any injury to plaintiff?" Taken together, the jury was aware that it was obligated to find Norfolk Southern liable if it found that Norfolk Southern's failure to have a heating arrangement caused *any* injury to Hawkins in whole or in

---

[1] It appears that the trial court's instruction regarding reduction of any award of damages was in reference to another argument by Norfolk Southern contending that Hawkins failed to mitigate his damages.

-11-

part. The reference to "some other cause" must be understood in context. In that context, the reference to "some other cause" conveyed to the jury only that it had to find for Norfolk Southern if it found that Hawkins's injury arose from some cause other than a violation of the regulation that caused the injury in whole or in part. The word "solely" could be construed as only modifying the word "result," but when considered in light of the instructions and case as a whole, it clearly also modifies "other cause." Thus, the challenged sentence, although awkwardly phrased, correctly informed the jury that it must find in favor of Norfolk Southern if Hawkins's injury was caused *entirely* by something other than Norfolk Southern's violation.

Hawkins argues that the term "conduct" might include conduct that was not negligent; he claims that, because only negligent conduct can be used to diminish an award, the reference to "conduct" without any qualification inaccurately stated the law. See 45 USC 53. However, although the trial court did discuss diminution shortly thereafter, it is clear that the sentence addressed causation. If the jury found that the violation of the regulation by Norfolk Southern did not cause Hawkins's injury in whole or in part—which would necessarily be the case if it found that the injury was the result of Hawkins's sole conduct—the jury would be required to find *entirely* in favor of Norfolk Southern. Consequently, the use of the term "conduct" was not by itself improper.

Hawkins also argues that it is improper to instruct the jury on sole cause of the injury when there is no evidence that the employee might have negligently caused his or her own injury or where it was undisputed that the railroad's violation caused in part the employee's injury. See, e.g., *Hardlannert v Illinois Central R Co*, 401 Ill App 3d 405, 411-412; 928 NE2d 172 (2010) (stating that the record evidence foreclosed a defense argument that the employee was completely responsible for his own injury). However, there was ample evidence that Hawkins engaged in acts or omissions that might have been the sole cause of any injuries that he might have suffered. There was evidence that Hawkins could have secured hand warmers from a number of locations to warm his hands and feet during the events at issue. There was also evidence that the maintenance of way department was ready, willing, and able to assist him with clearing switches, but he did not fully avail himself of their services. Additionally, there was evidence that Hawkins chose not to take appropriate breaks, did not utilize his opportunities to take breaks from the weather in the locomotive or other transportation, and might have unnecessarily exposed himself to the elements in order to smoke or allow his coworker to smoke. Taken together, a reasonable jury could have found that Hawkins's negligent acts or omissions were the sole cause of his injuries. Given the evidentiary dispute, the instruction was not improper.

The sentence of which Hawkins complains might have been better omitted. See *Page v St Louis Southwestern R Co*, 349 F2d 820, 826-827 (CA 5, 1965) (stating that sole cause instructions are unnecessary and better left unstated because the standard instruction covers the matter). It also might have been better phrased. However, the trial court's instructions to the

jury, as a whole, adequately stated the law and issues; any shortcomings in the wording do not warrant a new trial. See MCR 2.613(A); *Johnson*, 423 Mich at 327.

Affirmed. As the prevailing party, Norfolk Southern may tax its costs. See MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens